IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TYRONE NORWOOD,

                Plaintiff,

       v.

KARINA DIAZ, ERIC LOWERY,
KELLY DEVINNEY, JANE/JOHN
DOE, MONROE HUDSON,
TERRA TAYLOR, ROBERT
MAY, STACIE HOLLIS, and
BRIAN EMIG,

              Defendants.

Civil Action No. 24-1141-CFC

---

Tyrone Norwood, JAMES T. VAUGHN CORRECTIONAL CENTER, Smyrna, Delaware

      Pro se *Plaintiff*

Dawn C. Doherty, MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C., Wilmington, Delaware

      *Counsel for Defendants Karina Diaz, Erik Lowery, and Kelly Devinney*

Maliheh Zare, LEWIS BRISBOIS BISGAARD & SMITH LLP, Wilmington, Delaware

      *Counsel for Defendants Erik Lowery and Kelly Devinney*

Kelsey Brady, STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware

      *Counsel for Defendants Monroe Hudson, Terra Taylor, Robert May, Stacie Hollis, and Brian Emig*

# MEMORANDUM OPINION

March 26, 2026
Wilmington, Delaware

_____
COLM F. CONNOLLY
CHIEF JUDGE

Plaintiff Tyrone Norwood, who appears *pro se*, filed the Complaint in this action against (1) Centurion Jane/John Doe, Karina Diaz, Erik Lowery, Kelly Devinney, Lori Lemon, and VitalCore Jane/John Doe[1] (collectively, the Medical Defendants) and (2) Monroe Hudson, Terra Taylor, Robert May, Stacie Hollis, and Brian Emig (collectively, the State Defendants). D.I. 3 at 1, 3–4. The State Defendants are Delaware Department of Correction (DDOC) officials at James T. Vaughn Correctional Center (JTVCC). D.I. 3 at 4. The Medical Defendants include personnel contracted by DDOC to provide medical or mental health services at JTVCC. D.I. 3 at 3, 5–6.

Norwood seeks compensatory and punitive damages and injunctive relief under 42 U.S.C. § 1983. D.I. 3 at 2, 12. Liberally construed, the Complaint asserts the following claims against Medical Defendants based on conduct on or before August 16, 2024: (1) a § 1983 adequacy of medical care claim alleging deliberate indifference against Lemon; (2) a § 1983 adequacy of medical care claim alleging deliberate indifference against Diaz, Lowery, and Devinney based on theories of

_____

[1] Pursuant to my March 24, 2025 Service Order (D.I. 8 ¶ 5), VitalCore identified the VitalCore Jane/John Doe Defendants as Lowery and Devinney. D.I. 11.

supervisor liability (failure to protect, failure to supervise, and failure to train); and (3) state tort law claims against Diaz, Lowery, and Devinney based on theories of supervisor liability (negligent hiring, supervision, and training). D.I. 3 at 5; D.I. 3 ¶¶ 1–16. Liberally construed, the Complaint also asserts the following claims against Medical Defendants based on alleged conduct on or after August 16, 2024: (1) a § 1983 deliberate indifference claim under the Eighth and Fourteenth Amendments based on delay or denial of mental health treatment and liver transplant medications; (2) a § 1983 procedural due process claim under the Fourteenth Amendment based on removal from the mental health treatment program without fair process; and (3) a § 1983 retaliation claim. D.I. 3 at 5; D.I. 3 ¶¶ 1–16.

Pending before me is the Motion to Dismiss (D.I. 18) (the Motion) filed by Medical Defendants Diaz, Lowery, Devinney, and Lemon pursuant to Federal Rule of Civil Procedure 12(b)(6). D.I. 19 at 5. Norwood did not oppose dismissal of Lemon, D.I. 20 at 4, and subsequently filed a motion to voluntarily dismiss claims against Lemon, D.I. 21. I granted that motion and dismissed with prejudice all claims in this case against Lemon. D.I. 27. Accordingly, the Motion is moot insofar as it seeks to dismiss claims against Lemon. Insofar as the Motion seeks to dismiss the Complaint's claims against Diaz, Lowery, and Devinney, I will grant the Motion for the following reasons.

2

## I.    BACKGROUND

The following facts are taken from the Complaint (D.I. 3) and its exhibits (D.I. 3-1) and assumed to be true for purposes of deciding the pending motion. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.") (citation omitted).

Norwood, an inmate at JTVCC, alleges that he was in a residential mental health treatment program at JTVCC to treat, among other issues, post-traumatic stress disorder (PTSD), severe depression, and hypertension from 2019 to about September 19, 2024. D.I. 3 ¶¶ 1, 12. Norwood also alleges that he has had a liver transplant and takes post-transplant medications. D.I. 3 ¶ 13(i).

Norwood alleges that Lemon was a mental health clinician for the residential mental health treatment program on or about March 2022 to August 16, 2024. D.I. 3 at 1, 3; D.I. 3 ¶ 1–3; D.I. 3-1 at 1. Norwood alleges that between June 2023 and August 16, 2024, he was involved in a relationship with Lemon that included "inappropriate sexual and other misconduct, exacted under her authority over [Norwood]," Lemon "having provided Plaintiff with gifts to continue on with the misconduct relationship," and "physical, emotional and psychological abuse by a person in authority." D.I. 3 ¶¶ 3, 6, 15 (some capitalization omitted); *but see*

3

D.I. 20 at 4 (Norwood "clarif[ying] that no sexual misconduct occurred between himself and . . . Lemon.").

At some time before August 16, 2024, a sexual misconduct allegation under the Prison Rape Elimination Act (PREA) was made by Norwood or on his behalf. D.I. 3-1 at 2 (referring to "a sexual misconduct allegation involving a contractual staff member"); D.I. 3-1 at 2 (referring to "a PREA allegation made by you or on your behalf"); *but see* D.I. 20 at 4 ("[Norwood] clarifies that . . . [t]he PREA investigation was initiated solely by prison officials after discovering a personal relationship.  Neither [Norwood] nor Ms. Lemon filed such a complaint."). Norwood alleges that Lemon was barred from JTVCC on August 16, 2024 pending an investigation into that allegation.  D.I. 3 ¶ 10; D.I. 3-1 at 1 ("This [August 27, 2024] letter is in response to a sexual misconduct allegation involving a contractual staff member.  This staff member was barred from James T. Vaughn Correctional Center on Friday, August 16, 2024, pending an investigation.").  Norwood alleges that a few days later on August 19, 2024, he saw Dr. Amanda, who "assured [him] that [he] was not at fault and [he] [is] the victim, and [he] needed to continue to seek the help [he] need[s]."  D.I. 3 ¶ 10; *see also* D.I. 3-1 at 2 (notifying Norwood in an October 11, 2024 letter from a PREA investigator that "[t]his office has investigated the allegation and determine the outcome to be: Substantiated") (emphasis in original).

4

Norwood alleges in the Complaint that (1) Medical Defendant Diaz is the Chief Executive Officer of Centurion,[2] D.I. 3 at 3; (2) Medical Defendant Lowery is a Mental Health Director at JTVCC, D.I. 3 at 1, 3, 5; and (3) Medical Defendant Devinney is a Mental Health Administrator at JTVCC, D.I. 3 at 1, 3, 5.

The Complaint asserts "claims against Medical Defendants as is related to [1] the inappropriate relationship with staff and [2] retaliatory acts . . . punishment for [Norwood] being a victim of staff members['] misconduct." D.I. 3 ¶ 15 (some capitalization omitted).

---

[2] At the request of Medical Defendants Diaz, Lowery, Devinney, and Lemon (D.I. 19 at 1 n.1), the Court takes judicial notice that the DDOC has contracted with two healthcare vendors during the time period relevant to this case: (1) Centurion of Delaware, LLC (Centurion) from April 1, 2020 through June 30, 2023; and (2) VitalCore Health Strategies LLC (VitalCore) starting on July 1, 2023. *See Delaware Department of Correction Selects National Leader in Correctional Healthcare Services*, DELAWARE DEPARTMENT OF CORRECTION (Mar. 2, 2020), https://doc.delaware.gov/assets/documents/newsroom/2020/20press0302.pdf [https://perma.cc/ZJ5M-JR5U] ("The transition of [D]DOC's correctional medical care and correctional behavioral health care contracts to Centurion will get underway immediately. Both three-year agreements with Centurion officially begin April 1, 2020 . . . ."); *Department of Correction Signs Contracts for Correctional Healthcare Services*, DELAWARE NEWS (May 5, 2023), https://news.delaware.gov/2023/05/05/department-of-correction-signs-contracts-for-correctional-healthcare-services/ [https://perma.cc/YQ4D-LUCB] ("The [DDOC] announced today that it has signed three-year contracts with VitalCore Health Strategies to provide medical care, behavioral health care and substance use disorder treatment to individuals under DOC supervision. . . . Both three-year agreements with VitalCore Health Strategies begin July 1, 2023. The DOC, VitalCore, and Centurion will coordinate a seamless transition of services[.]").

5

First, the Complaint alleges that on or before August 16, 2024, Lowery and Devinney "were aware of [Norwood's] suspicious inappropriate relationship with . . . Lemon" but "[t]hey took no action to stop the misconduct that lasted over 2 years!" D.I. 3 ¶ 6 (some capitalization omitted); *but see* D.I. 20 at 4 (Norwood "clarif[ying] that no sexual misconduct occurred between himself and . . . Lemon.").

Second, the Complaint alleges that "Medical Defendants" were involved in the following retaliatory acts on or after August 16, 2024:

(1) on or around September 19, 2024, Norwood was terminated from the mental health program, D.I. 3 ¶¶ 7, 12; D.I. 3-1 at 6;

(2) "[Norwood's] mail has been denied," D.I. 3 ¶ 8 (some capitalization omitted); D.I. 3-1 at 7; and

(3) "personal phone numbers were suddenly deleted from [Norwood's] call list without justification," D.I. 3 ¶ 9 (capitalization omitted); D.I. 3-1 at 8–10;

(4) "[Norwood] was made aware [he] was being moved to unit 23" on September 19, 2024, D.I. 3 ¶ 12 (capitalization omitted); D.I. 3-1 at 6; and

(5) "on Sept. 24, 2024 [Norwood] was moved to compound V – BLDG C-12 as further retaliation and to cause [him] hardship" where "having a liver transplant, [his] needed medications are being continually disrupted" and "[he is] now being forced to work, without [his] medications, and at cause of stress and further sickness[,]" D.I. 3 ¶ 13 (some capitalization omitted); *but see* D.I. 3-1 at 8 (listing "Current Housing" as "Bldg V, Tier C, Cell 12" on September 23, 2024 Grievance Report).

6

D.I. 3 ¶ 15; *see also* D.I. 20 at 3–4 (Norwood "clarif[ying] that . . . [a]ll retaliation, denial of care, and removal from the mental health program occurred after Ms. Lemon's termination, carried out by other . . . medical contractors").

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(6)

In reviewing a motion to dismiss filed under Rule 12(b)(6), the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court may consider only the allegations in the Complaint and the documents incorporated into the Complaint by reference and matters of which the Court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94.

To state a claim upon which relief can be granted a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but the complaint must set forth enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content allows the

7

court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"Leave to amend must be granted unless amendment would be inequitable or futile." *Berk v. Rothman Inst. Orthopedic Found.*, 2025 WL 1177253, at *3 (3d Cir. Apr. 23, 2025) (internal quotation marks and citation omitted). "Amendment would be futile if the amended complaint would not survive a motion to dismiss for failure to state a claim." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014).

### B.    Section 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

The Eighth Amendment's prohibition against cruel and unusual punishment requires prisons to provide medical care to inmates. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). "To

plead deliberate indifference under the Eighth Amendment, a plaintiff must allege that (1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff." *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023). "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (alteration in original) (citation omitted).

The Fourteenth Amendment's Due Process Clause applies the Eighth Amendment's prohibition on cruel and unusual punishment to the states. *Robinson v. California*, 370 U.S. 660, 667 (1962).

The Due Process Clause of the Fourteenth Amendment also secures procedural due process rights, such as notice and opportunity for hearing before a deprivation of any significant property interest. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). "Procedural due process claims [under § 1983] face a two-part gateway inquiry: (1) whether the plaintiff has a property interest protected by procedural due process, and (2) what procedures constitute due process of law." *S. Allegheny Pittsburgh Rest. Enters., LLC v. City of Pittsburgh*, 806 F. App'x 134, 139 (3d Cir. 2020).

9

## III.    DISCUSSION

### A.    Section 1983 Claims

#### 1.    Claim Based on Allegations on or Before August 16, 2024

I will first address the § 1983 deliberate indifference claim asserted against Diaz, Lowery, and Devinney based on theories of supervisor liability (failure to protect, failure to supervise, and failure to train) for Lemon's misconduct on or before August 16, 2024.

The allegations in the Complaint indicate that Diaz, Lowery, and Devinney are named as defendants based upon their supervisory positions over Lemon: Diaz as Chief Executive Officer of Centurion, Lowery as Mental Health Director at JTVCC, and Devinney as Mental Health Administrator at JTVCC. *See* D.I. 3 at 3; D.I. 3 ¶¶ 1, 6. I pause to note that the Complaint's claims against Diaz are especially weak. Beyond identifying Diaz as the Chief Executive Officer of Centurion, D.I. 3 at 3, the Complaint includes no specific allegations against Diaz, *see generally* D.I. 3. *See also* D.I. 34 at 2 (arguing that "nowhere in the Complaint does Plaintiff even mention Ms. Diaz aside from alleging that she was the C.E.O. of Centurion of Delaware, LLC in the 'Defendants' section of the Complaint").

But as it relates to all three of Diaz, Lowery, and Devinney, Norwood has "clarifie[d]" in his opposition brief that "no sexual misconduct occurred between himself and . . . Lemon." D.I. 20 at 4. Absent the material allegations of Lemon's misconduct, the Complaint does not contain "factual content that allows the court

10

to draw the reasonable inference that [any other Medical] [D]efendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, Norwood has failed to plead a plausible constitutional violation or wrong, and Norwood has failed to state a deliberate indifference claim against Diaz, Lowery, or Devinney for failure to protect Norwood from Lemon, failure to supervise Lemon, or failure to train Lemon under § 1983. *See West*, 487 U.S. at 48 ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States[.]").

Based on Norwood's clarifications in his opposition that "no sexual misconduct occurred between himself and . . . Lemon" and "[a]ll retaliation, denial of care, and removal from the mental health program occurred after Ms. Lemon's termination [on August 16, 2024]" (D.I. 20 at 4), amendment would be futile as to this § 1983 claim. Accordingly, I will dismiss with prejudice the Complaint as to the § 1983 deliberate indifference claim against Diaz, Lowery, and Devinney based on conduct before Lemon's termination on August 16, 2024.

### 2. Claims Based on Allegations on or After August 16, 2024

I will next address the three § 1983 claims asserted against Diaz, Lowery, and Devinney based on alleged conduct on or after August 16, 2024: (1) the deliberate indifference claim under the Eighth and Fourteenth Amendments based on delay or denial of mental health treatment and liver transplant medications;

11

(2) the procedural due process claim under the Fourteenth Amendment based on removal from the mental health treatment program without fair process; and (3) the retaliation claim. D.I. 3 ¶¶ 1–16.

The Complaint alleges various retaliatory acts against Norwood on or after August 16, 2024. D.I. 3 ¶¶ 7–9, 12–13, 15. But the Complaint fails to allege that Diaz, Lowery, or Devinney—in their supervisory positions—had any personal involvement in removing Norwood from the residential mental health treatment program, denying Norwood's mail, deleting personal phone numbers from Norwood's call list, moving Norwood to unit 23, moving Norwood to BLDG C-12, or disrupting Norwood's liver transplant medications. *See generally* D.I. 3; *see also* D.I. 3 ¶ 12 (alleging that non-defendant Dr. Amanda told Norwood that "she has no control in [the] matter" of Norwood "being moved to unit 23 and terminated from [the residential mental health treatment] program").[3] Accordingly, Norwood has failed to state claims under § 1983 against Diaz, Lowery, or Devinney for

_____

[3] In resolving the pending Motion, the Court has not considered the newly alleged fact in Norwood's opposition brief that "Plaintiff alleges Diaz . . . [was] aware of the retaliation and medical neglect but failed to prevent it" in relation to Norwood's § 1983 failure to protect claim (D.I. 20 at 3). *See Frederico v. Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007) (courts "do not consider after-the-fact allegations in determining the sufficiency of her complaint under Rule . . . 12(b)(6)."); *see also Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss.") (alteration in original) (citation omitted).

alleged conduct on or after August 16, 2024. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("Section 1983 will not support a claim based on a *respondeat superior* theory of liability.") (italicization in original) (citation omitted); *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.") (internal quotation marks and citations omitted).

Moreover, Norwood's liberally-construed allegations of retaliation for reporting sexual misconduct are baseless because Norwood has "clarifie[d]" in his opposition brief that "[t]he PREA investigation was initiated solely by prison officials after discovering a personal relationship" and Norwood did not "file[] such a complaint" (D.I. 20 at 4). Likewise, Norwood's allegations of retaliation for being a victim of misconduct (D.I. 3 ¶ 15) are baseless because Norwood has "clarifie[d]" in his opposition brief that "no sexual misconduct occurred between himself and [then] Defendant Lemon" (D.I. 20 at 4). In other words, an additional reason that Norwood has failed to state a § 1983 retaliation claim against Diaz, Lowery, or Devinney is that Norwood's relationship with Lemon was not constitutionally protected. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) ("As a threshold matter, a prisoner-plaintiff in a retaliation case [under § 1983]

13

must [allege] that the conduct which led to the alleged retaliation was constitutionally protected.").

Based on Norwood's clarifications in his opposition that "no sexual misconduct occurred between himself and . . . Lemon" and "[t]he PREA investigation was initiated solely by prison officials after discovering a personal relationship" (D.I. 20 at 4), amendment would be futile as to the retaliation claim. Accordingly, I will dismiss with prejudice the Complaint as to the § 1983 retaliation claim against Diaz, Lowery, and Devinney.

As for the deliberate indifference and procedural due process claims based on alleged conduct on or after August 16, 2024, because Diaz as Chief Executive Officer of Centurion was no longer a person acting under color of state law at JTVCC after DDOC's contract with Centurion ended on June 30, 2023, amendment would be futile. *See West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff . . . must show that the alleged deprivation was committed by a person acting under color of state law.") (citations omitted). Accordingly, I will dismiss with prejudice the Complaint as to the § 1983 claims against Diaz based on conduct after Lemon's termination on August 16, 2024.

I will otherwise dismiss the Complaint as to the § 1983 deliberate indifference and procedural due process claims against Lowery and Devinney based on conduct after Lemon's termination on August 16, 2024, without prejudice

14

to Norwood to file an amended complaint to correct the deficiencies discussed
above.

### B.   State Law Claims

Liberally construed, the Complaint also asserts state tort law claims based on
theories of supervisor liability (negligent hiring, supervision, and training) against
Diaz, Lowery, and Devinney.  D.I. 3 ¶¶ 1–16; *see also* D.I. 18 at 10–13
(Defendants arguing in support of the pending Motion that Norwood "fails to state
a claim of negligent hiring or supervision") (capitalization omitted); *but see* D.I. 20
(Norwood's opposition not mentioning state tort law claims).

> Under 28 U.S.C. § 1367(c)(3), a district court has
> discretion to decline to exercise supplemental jurisdiction
> over state law claims if it has dismissed all claims over
> which it had original jurisdiction.  Where the claims over
> which the district court had original jurisdiction are
> dismissed before trial, the district court must decline to
> decide the pendent state claims unless considerations of
> judicial economy, convenience, and fairness to the parties
> provide an affirmative justification for doing so.

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Christie*, 850 F. Supp. 2d 455 (D.N.J.
2012), *aff'd sub nom. Ass'n N.J. Rifle & Pistol Clubs v. Governor of New Jersey*,
707 F.3d 238 (3d Cir. 2013) (internal quotation marks and citations omitted).

Because I will dismiss the Complaint's federal § 1983 claims, and I find that
there is no affirmative justification for retaining jurisdiction over Norwood's state

15

law claims that he may or may not have intended to plead, I decline to exercise jurisdiction over the state tort law claims.

## IV.    CONCLUSION

For the reasons stated above, I will dismiss the Complaint's claims against Diaz, Lowery, and Devinney.

The Court will issue an Order consistent with this Memorandum Opinion.